OLLIE J. BERGER *v.* JOHN J. SHANAHAN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued October 4—decided November 15, 1955

*Walter F. Torrance, Jr.,* with whom, on the brief, were *Theobald E. Conway* and *Walter R. Griffin,* for the appellant (defendant).

*James T. Healey,* with whom was *Frank T. Healey, Jr.,* for the appellee (plaintiff).

INGLIS, C. J. The plaintiff seeks to recover from his employee, for a claimed breach of the contract of employment, the sum fixed in the contract as liquidated damages. The trial court rendered judgment for that sum, and the defendant has appealed.

The court found, and was warranted in finding, the following subordinate facts: On Sunday, February 24, 1952, the plaintiff and the defendant met in New York City and executed a contract whereby it was agreed that the defendant should be employed by the plaintiff as a salesman-mill representative for the term of five years. The defendant makes no claim that the contract is invalid because it was entered into on a Sunday. The contract had been drafted for the plaintiff by his attorney and was shown to the defendant for the first time at the meeting. Prior to the execution of the contract, however, the document was read aloud and was discussed by the parties provision by provision. By its terms, the defendant was to receive as compensation for his services either 50 per cent or 20 per cent of the commissions obtained by the plaintiff from his clients on account of sales made by the defendant. The larger percentage was to be paid on sales to new accounts acquired through the efforts of the defendant or on sales to "house accounts" permanently assigned to him, whereas the smaller percentage was to be paid on sales to house accounts referred to the defendant for special attention.

Another provision in the contract read as follows: "First Party [the plaintiff] further agrees to pay to said Second Party [the defendant] a special cash allowance of One Hundred Dollars ($100.00) per week during the first 26 weeks of the employment of the Second Party commencing with the first day of the employment. In the event the Second Party shall leave the employment of the First Party within one year after the date of execution of this contract, without cause, it is recognized that said First Party will suffer damages therefrom, and the amount of such damages being difficult, if not impossible of

determination, the Second Party agrees therefore to refund, as liquidated damages, to First Party all of that portion of the special cash allowance, which has already been paid to him."

The defendant worked for the plaintiff from June 9, 1952, until December 5 of that year. During that time he earned nothing by way of commissions but received a total of $2600 by virtue of the provision of the contract just quoted. He left the employ of the plaintiff because he was disappointed that the plaintiff had not assigned any house accounts to him and because he had not made as much money as he had expected.

The field of endeavor in which the plaintiff was engaged and in which, under the agreement, the defendant was to become engaged was the procuring of outlets for the products of fabricators of metal. Effective work in that field requires familiarity with the ability of the various fabricators to produce and knowledge of the needs and requirements of users. It also requires the development of personal contacts with managerial, sales and purchasing personnel of both fabricators and users. The defendant, prior to the execution of the contract, had had only limited contact with the area where he was to work, the principals whom he was to represent, and the potential purchasers. Consequently, it was contemplated by the parties that he would require some time to familiarize himself with the work and that, until he gained familiarity, it was improbable that the relationship between the plaintiff and the defendant would be of advantage to either of them. Accordingly, if the defendant left the employ of the plaintiff, the latter would lose all the benefits which would otherwise accrue to him from the familiarization of the defendant with the field of business. In the event

of the defendant's leaving, it would be extremely difficult, if not impossible, to determine with reasonable accuracy the amount of the damage sustained by the plaintiff.

On these facts, the trial court concluded that (1) the defendant left the plaintiff's employ without due cause and (2) the agreement by the defendant to repay, in the event he left the plaintiff's employ in less than a year, the total amount of the special allowance paid him by the plaintiff was an agreement for liquidated damages, not for a penalty, and was therefore enforceable. The questions raised by this appeal are whether those conclusions were correct.

With reference to the first conclusion, the contention of the defendant is that he was justified in abandoning his employment because the plaintiff himself had broken the contract by failing to assign any so-called house accounts permanently to the defendant. There is no express finding, and indeed no proper request for a finding, that the plaintiff did not assign any such accounts. It is, however, undisputed that he did not do so. The answer to the defendant's contention in this regard is simply that the contract neither expressly nor by implication required the plaintiff to make any such assignments. It is true that the contract provided that the rate for the defendant's commissions on sales made by him to house accounts which might be permanently assigned to him was to be the same as the rate for his commissions on sales to accounts originated by him. This, however, indicates nothing more than that it was the intention of the parties that the plaintiff might, if he chose, assign some house accounts to the defendant for servicing. It does not indicate that it was the intention of the parties that the plaintiff should be bound to make

any such assignments. If his failure to assign house accounts was the cause of the defendant's leaving his employ, it was not a cause which justified that leaving. The court's conclusion that the defendant left the plaintiff's employment without just cause was correct.

We now turn to a consideration of the conclusion of the court that the agreement for a refund by the defendant, if he left his employment before the expiration of one year, of the full amount of the special allowance received by him was for liquidated damages and therefore enforceable. The law is well established in this jurisdiction, as well as elsewhere, that a term in a contract calling for the imposition of a penalty for the breach of the contract is contrary to public policy and invalid, but a contractual provision fixing the amount of damages to be paid in the event of a breach is enforceable if it satisfies certain conditions. *King Motors, Inc.* v. *Delfino,* 136 Conn. 496, 498, 72 A.2d 233; *May* v. *Young,* 125 Conn. 1, 8, 2 A.2d 385; *Miller* v. *Macfarlane,* 97 Conn. 299, 300, 116 A. 335; *Rabinowitz* v. *Apter,* 90 Conn. 1, 3, 96 A. 157; *Schoolnick* v. *Gold,* 89 Conn. 110, 115, 93 A. 124; *Banta* v. *Stamford Motor Co.,* 89 Conn. 51, 54, 92 A. 665; *New Britain* v. *New Britain Telephone Co.,* 74 Conn. 326, 331, 50 A. 881, 1015; 1 Sedgwick, Damages (9th Ed.) §§ 390, 391, 405; 5 Corbin, Contracts, p. 281, § 1057.

A contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach. *May* v. *Young,* supra, 9. A provision for liquidated damages, on the other hand, is one the real purpose of which is to fix fair compensation to the injured party for a breach of the contract. In determining

whether any particular provision is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase "liquidated damages" or the word "penalty" is used. Rather, that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract. *King Motors, Inc.* v. *Delfino,* 136 Conn. 496, 498, 72 A.2d 233.

In the present case, the court concluded that all three of these conditions were satisfied, and the subordinate facts found warranted that conclusion. The contract called for the rendition of personal services by the defendant. Obviously, the actual damage which would be sustained by the plaintiff in the event the defendant did not serve out at least a full year would be uncertain and difficult of proof. That it was the intention of the parties to liquidate the damages arising from a possible breach is apparent from the wording of the contract itself. The defendant argues that the court had no basis for an inference that this was the intention of the parties, because it does not appear that there was any discussion by them, before the contract was executed, of the provision under consideration. It is a sufficient answer to this contention that the unattacked finding

of the court is that the whole contract, including the clause in question, was read aloud in the presence of both parties and each provision was discussed. They both knew the language of the clause and they therefore are conclusively presumed, in the absence of some evidence of mistake, to have intended the result which the language of the clause expressly provided for.

Lastly, it is clear that the amount of damages stipulated for in the clause was not unreasonably disproportionate to the injury which would be sustained by the plaintiff if the defendant quit his job in less than one year. The obvious purpose of the special allowance of $100 per week to be paid by the plaintiff to the defendant during the first six months of the term of the contract was to provide a living wage for the defendant while he was making his initial contacts. It apparently was contemplated by the parties that during that six-month period the defendant would not be producing much, if any, business for the benefit of the plaintiff. Consequently, the payment of the special allowance in addition to any commissions the defendant might earn was, so far as the plaintiff was concerned, an investment in the future. It was an investment which was expected to yield a profit to the plaintiff, after the expiration of the six-month period, in the form of orders procured by the defendant because of the experience he had gained during that period. It follows that it was reasonable to expect that if the defendant left the employ of the plaintiff before the expiration of the first year the plaintiff would lose all or nearly all of the advantage which his investment in the form of the special allowance was expected to bring him. Accordingly, he would be damaged by the defendant's quitting within the first

year, at least to the extent of the amount he had paid the defendant as special allowance.

All three conditions, the presence of which leads ordinarily to the conclusion that a contractual provision for a fixed amount of damages is for liquidated damages rather than for a penalty, were satisfied with reference to the provision of the contract in the present case. Therefore, the court was warranted in its conclusion that the provision was valid and enforceable.

There is no error.

In this opinion the other judges concurred.