## EUEL D. VINES ET AL. *v.* ORCHARD HILLS, INC.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued April 11—decision released July 15, 1980

*Walter A. Stewart, Jr.,* for the appellant (defendant).

*Joel Schlossberg,* for the appellees (plaintiffs).

PETERS, J. This case concerns the right of purchasers of real property, after their own default, to recover moneys paid at the time of execution of a valid contract of sale. The plaintiffs, Euel D. Vines and his wife Etta Vines, contracted, on July 11, 1973, to buy Unit No. 10, Orchard Hills Condominium, New Canaan, from the defendant Orchard Hills, Inc. for $78,800. On or before that date, they had paid the defendant $7880 as a down payment toward the purchase. Alleging that the sale of the property was never consummated, the plaintiffs sought to recover their down payment. The trial court, *I. Levine, J.,* overruled the defendant's demurrer to the plaintiffs' amended complaint; subsequently, after a hearing, the trial court, *Novack, J.,* rendered judgment for the plaintiffs for $7880 plus interest. The defendant's appeal

maintains that its demurrer should have been sustained, that its liquidated damages clause should have been enforced, and that evidence of the value of the property at the time of the trial should have been excluded.

The facts underlying this litigation are straightforward and undisputed. When the purchasers contracted to buy their condominium in July, 1973, they paid $7880, a sum which the contract of sale designated as liquidated damages.[1] The purchasers decided not to take title to the condominium because Euel D. Vines was transferred by his employer to New Jersey; the Vines so informed the seller by a letter dated January 4, 1974. There has never been any claim that the seller has failed, in any respect, to conform to his obligations under the contract, nor does the complaint allege that the purchasers are legally excused from their performance under the contract. In short, it is the purchasers and not the seller whose breach precipitated the present cause of action.

In the proceedings below, the purchasers established that the value of the condominium that they had agreed to buy for $78,800 in 1973 had, by the time of the trial in 1979, a fair market value of $160,000. The trial court relied on this figure to conclude that, because the seller had gained what it characterized as a windfall of approximately $80,000, the purchasers were entitled to recover their down payment of $7880. Neither the purchasers nor the seller proffered any evidence at the

---

[1] Paragraph 9 of the contract of sale provided: "DEFAULT: In the event Purchaser fails to perform any of the obligations herein imposed on the Purchaser, the Seller performing all obligations herein imposed on the Seller, the Seller shall retain all sums of money paid under this Contract, as liquidated damages, and all rights and liabilities of the parties hereto shall be at an end."

trial to show the market value of the condominium at the time of the purchasers' breach of their contract or the damages sustained by the seller as a result of that breach.

The seller's principal argument on this appeal is that the trial court improperly disregarded the parties' valid liquidated damages clause. That claim is pursued both by a renewal of the seller's position that the purchasers' complaint was demurrable and by an argument on the merits of the evidence presented at the trial. As to the demurrer, now denominated a motion to strike by Practice Book, 1978, § 152, we find no error. Whether a party may recover payments made despite its own default and despite its agreement to a liquidated damages clause is a question that presents issues of fact which transcend the legal sufficiency of the complaint, as the trial itself demonstrated. *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 517, 227 A.2d 83 (1967); 1 Stephenson, Conn. Civ. Proc. § 119b (1970). The trial court was, however, in error in its conclusion that the evidence before it was sufficient to sustain a judgment in favor of the purchasers.

The ultimate issue on this appeal is the enforceability of a liquidated damages clause as a defense to a claim of restitution by purchasers in default on a land sale contract. Although the parties, both in the trial court and here, have focused on the liquidated damages clause per se, we must first consider when, if ever, purchasers who are themselves in breach of a valid contract of sale may affirmatively invoke the assistance of judicial process to recover back moneys paid to, and withheld by, their seller.

# I

The right of a contracting party, despite his default, to seek restitution for benefits conferred and allegedly unjustly retained has been much disputed in the legal literature and in the case law. See 5A Corbin, Contracts §§ 1122–1135 (1964); Dobbs, Remedies § 12.14 (1973); 1 Palmer, Restitution, c. 5 (1978); 12 Williston, Contracts §§ 1473 through 1478 (3d Ed. 1970); 5 Williston, Contracts § 791 (3d Ed. 1961); Lee, "The Plaintiff in Default," 19 Vand. L. Rev. 1023 (1965–66); Talbott, "Restitution for the Defaulting Buyer," 9 W. Res. L. Rev. 445 (1958); annot., "Vendee's Recovery of Purchase Money," 31 A.L.R.2d, pp. 8–131 (1953). Although earlier cases often refused to permit a party to bring an action that could be said to be based on his own breach; see, e.g., *Hansbrough* v. *Peck,* 72 U.S. (5 Wall.) 497, 506, 18 L. Ed. 520 (1867); *Wheeler* v. *Mather,* 56 Ill. 241, 246–47 (1870); *Miller* v. *Snedeker,* 257 Minn. 204, 217–18, 101 N.W.2d 213 (1960); *Ketchum & Sweet* v. *Evertson,* 13 Johns. 359, 365 (N.Y. 1816); *Dluge* v. *Whiteson,* 292 Pa. 334, 335–36, 141 A. 230 (1928); many of the more recent cases support restitution in order to prevent unjust enrichment and to avoid forfeiture. See, e.g., *Hook* v. *Bomar,* 320 F.2d 536, 541 (5th Cir. 1963); *Amtorg Trading Corporation* v. *Miehle Printing Press & Mfg. Co.,* 206 F.2d 103, 108 (2d Cir. 1953); *Honey* v. *Henry's Franchise Leasing Corporation,* 64 Cal. 2d 801, 803, 415 P.2d 833 (1966); *Freedman* v. *Rector, Wardens & Vestrymen of St. Matthias Parish,* 37 Cal. 2d 16, 20, 230 P.2d 629 (1951); *Haas* v. *Crisp Realty Co.,* 65 So. 2d 765, 768 (Fla. 1953); *Nichols* v. *Knowles,* 87 Idaho 550, 556, 394 P.2d 630 (1964); *Graves* v. *Cupic,* 75

Idaho 451, 456–59, 272 P.2d 1020 (1954); *Woodliff* v. *Al Parker Securities Co.,* 233 Mich. 154, 156, 206 N.W. 499 (1925); *Newcomb* v. *Ray,* 99 N.H. 463, 467, 114 A.2d 882 (1955); *Massey* v. *Love,* 478 P.2d 948, 950–51 (Okla. 1971); *DeLeon* v. *Aldrete,* 398 S.W.2d 160, 163–64 (Tex. 1966); *Perkins* v. *Spencer,* 121 Utah 468, 475–77, 243 P.2d 446 (1952); *Schwartz* v. *Syver,* 264 Wis. 526, 531, 533, 59 N.W.2d 489 (1953); and see Restatement (Second), Contracts § 388 (Tent. Draft No. 14, 1979).

A variety of considerations, some practical and some theoretical, underlie this shift in attitude toward the plaintiff in breach. As Professor Corbin pointed out in his seminal article, "The Right of a Defaulting Vendee to the Restitution of Instalments Paid," 40 Yale L.J. 1013 (1931), the anomalous result of denying any remedy to the plaintiff in breach is to punish more severely the person who has partially performed, often in good faith, than the person who has entirely disregarded his contractual obligations from the outset. Only partial performance triggers a claim for restitution, and partial performance will not, in the ordinary course of events, have been more injurious to the innocent party than total nonperformance. Recognition of a claim in restitution is, furthermore, consistent with the economic functions that the law of contracts is designed to serve. See Kessler & Gilmore, Contracts, pp. 4–6 (1970). The principal purpose of remedies for the breach of contract is to provide compensation for loss; see Restatement (Second), Contracts, c. 16, Introductory Note (Tent. Draft No. 14, 1979); Farnsworth, "Legal Remedies for Breach of Contract," 70 Colum. L. Rev. 1145 (1970); and therefore a party injured by breach

of contract is entitled to retain nothing in excess
of that sum which compensates him for the loss
of his bargain. Indeed, there are those who argue
that repudiation of contractual obligations is
socially desirable, and should be encouraged, when-
ever gain to the party in breach exceeds loss to the
party injured by breach. Birmingham, "Breach of
Contract, Damage Measures, and Economic Effi-
ciency," 24 Rut. L. Rev. 273, 284 (1970); Posner,
Economic Analysis of Law § 4.9, pp. 89–90 (2d Ed.
1977). To assign such primacy to inferences drawn
from economic models requires great confidence
that the person injured by breach will encounter no
substantial difficulties in establishing the losses
for which he is entitled to be compensated. It is
not necessary to push the principle of compensa-
tory damages that far, or to disregard entirely the
desirability of maintaining some incentives for the
performance of promises. A claim in restitution,
although legal in form, is equitable in nature, and
permits a trial court to balance the equities, to take
into account a variety of competing principles to
determine whether the defendant has been unjustly
enriched. "Even though we adhere to the rule that
only compensatory damages are to be awarded,
there are other important questions of policy to be
considered. One is whether aid is to be given to
one who breaches his contract, particularly when
the breach is deliberate and without moral justifica-
tion. Another is whether restitution can be admin-
istered without leaving the innocent party with
uncompensated damages." 1 Palmer, Restitution
§ 5.1, p. 574 (1978).

Recognition that there are circumstances under
which a defaulting purchaser may be entitled to
restitution for benefits conferred upon the innocent

seller of land is consistent with parallel developments elsewhere in the law of contracts. Judicial resistance to enforcement of forfeitures has of course long been a commonplace, particularly with regard to contract clauses purporting to liquidate damages. See 5 Corbin, Contracts § 1058 (1964); 5 Williston, Contracts § 788 (3d Ed. 1961). Despite the deference afforded by nineteenth-century courts to freedom of contract in other areas; see Weisbrod, The Boundaries of Utopia, pp. 165–67, 210–11 (1980); clauses that might impose forfeitures were invariably carefully scrutinized and frequently denounced as penal. Contract clauses permitting retention of partial payments pursuant to contracts of conditional sale temporarily escaped this obloquy, on the theory that a seller's retention of a property interest in his goods entitled him, upon any default by the buyer, both to retake his goods and to retain any moneys paid. See 1 Gilmore, Security Interests in Personal Property § 3.2 (1965); 3 Jones, Chattel Mortgages and Conditional Sales §§ 1378, 1382 (6th Ed. 1933); Glenn, "The Conditional Sale at Common Law and as a Statutory Security," 25 Va. L. Rev. 559, 572 (1939). The law of conditional sales contracts came, however, in this century, to recognize that avoidance of forfeiture was more important than retention of title, so that conditional sales, like chattel mortgages, were enforced in such a way as to preserve the debtor's equity. See 1 Gilmore, supra, 68; Glenn, supra, 580. In a similar vein, in real property transactions courts have long protected a debtor's equity from forfeiture by allowing the debtor to show by parol evidence that a deed although absolute on its face was actually intended to be a mortgage. See Osborne, Mortgages §§ 72–73 (1970).

In this state, at the turn of the century, in *Pierce* v. *Staub,* 78 Conn. 459, 466, 62 A. 760 (1906), this court acknowledged the equitable claim of a purchaser in breach to recover moneys paid under a contract to purchase real property. *Pierce* v. *Staub* is distinguishable from the case before us, because the court there found (p. 465) that the parties had, after the buyer's breach, rescinded the contracts in question. In view of this rescission, the purchaser's widow was held to be entitled to a return of the $60,000 paid on the purchase price of $150,000. *Pierce* v. *Staub* was thereafter relied upon in another case involving rescission after termination of a contract, *Remington Arms U.M.C. Co.* v. *Gaynor Mfg. Co.,* 98 Conn. 721, 734–35, 120 A. 572 (1923), and has, since then, been cited for the proposition that courts of law may, on suitable occasions, afford equitable relief from forfeiture. *Menzies* v. *Fisher,* 165 Conn. 338, 357, 334 A.2d 452 (1973); *Elberton Cotton Mills, Inc.* v. *Indemnity Ins. Co.,* 108 Conn. 707, 714, 145 A. 33 (1929); *Baurer* v. *Devenis,* 99 Conn. 203, 216, 121 A. 566 (1923). Apart from *Pierce* v. *Staub,* we have never directly decided whether a purchaser of real estate may, despite his breach, recover payments made to his seller. But *Pierce* v. *Staub* is an impressive, and an impressively early, guidepost toward permitting such a cause of action. The court's narrow reliance on the possibly artificial conclusion of mutual rescission should not obscure the breadth of its language deploring forfeiture. *Pierce* v. *Staub,* supra, 466. We therefore conclude that a purchaser whose breach is not willful has a restitutionary claim to recover moneys paid that unjustly enrich his seller. In this case, no one has alleged that the purchasers' breach, arising out of a transfer to a more distant

place of employment, should be deemed to have been willful. The trial court was therefore not in error in initially overruling the seller's demurrer and entertaining the purchasers' cause of action.

## II

The purchaser's right to recover in restitution requires the purchaser to establish that the seller has been unjustly enriched. The purchaser must show more than that the contract has come to an end and that the seller retains moneys paid pursuant to the contract. To prove unjust enrichment, in the ordinary case, the purchaser, because he is the party in breach, must prove that the damages suffered by his seller are less than the moneys received from the purchaser. *Schwasnick* v. *Blandin,* 65 F.2d 354, 358 (2d Cir. 1933); *Kitchin* v. *Mori,* 437 P.2d 865, 866 (Nev. 1968). It may not be easy for the purchaser to prove the extent of the seller's damages, it may even be strategically advantageous for the seller to come forward with relevant evidence of the losses he has incurred and may expect to incur on account of the buyer's breach. Nonetheless, only if the breaching party satisfies his burden of proof that the innocent party has sustained a net gain may a claim for unjust enrichment be sustained. Dobbs, Remedies § 12.14 (1973); 1 Palmer, Restitution § 5.4 (1978).

In the case before us, the parties themselves stipulated in the contract of sale that the purchasers' down payment of 10 percent of the purchase price represents the damages that would be likely to flow from the purchasers' breach. The question then becomes whether the purchasers have demonstrated the seller's unjust enrichment in the face of the liquidated damages clause to which they agreed.

This is not a suitable occasion for detailed review of the checkered history of liquidated damages clauses. Despite the judicial resistance that such clauses have encountered in the past; 5 Corbin, Contracts § 1066 (1964); 5 Williston, Contracts § 788 (3d Ed. 1961); Goetz & Scott, "Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on an Enforcement Model and a Theory of Efficient Breach," 77 Colum. L. Rev. 554–56 (1977); Macneil, "Power of Contract and Agreed Remedies," 47 Cornell L. Q. 495, 507–508 (1962); this court has recognized the principle that there are circumstances that justify private agreements to supplant judicially determined remedies for breach of contract. *Berger* v. *Shanahan,* 142 Conn. 726, 731–32, 118 A.2d 311 (1955); *King Motors* v. *Delfino,* 136 Conn. 496, 498, 72 A.2d 233 (1950); cf. General Statutes § 42a-2-718 (1); and Restatement (Second), Contracts § 370 (Tent. Draft No. 14, 1979). This court has however refused to enforce an otherwise valid liquidated damages clause upon a finding that no damages whatsoever ensued from the particular breach of contract that actually occurred. *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* 153 Conn. 681, 689, 220 A.2d 263 (1966).

Most of the litigation concerning liquidated damages clauses arises in the context of an affirmative action by the party injured by breach to enforce the clause in order to recover the amount therein stipulated. In such cases, the burden of persuasion about the enforceability of the clause naturally rests with its proponent. See, e.g., *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* supra, 688. In the case before us, by contrast, where the plaintiffs are themselves in default, the plaintiffs bear

the burden of showing that the clause is invalid and unenforceable. See *Frank Towers Corporation* v. *Laviana,* 140 Conn. 45, 53–54, 97 A.2d 567 (1953); 5A Corbin, Contracts § 1132, p. 64 (1964); Macneil, supra, 517. It is not unreasonable in these circumstances to presume that a liquidated damages clause that is appropriately limited in amount bears a reasonable relationship to the damages that the seller has actually suffered. See Restatement (Second), Contracts § 388, esp. subsection (2) (Tent. Draft No. 14, 1979).[2] The seller's damages, as Professor Palmer points out, include not only his expectation damages suffered through loss of his bargain, and his incidental damages such as broker's commissions, but also less quantifiable costs arising out of retention of real property beyond the time of the originally contemplated sale. 1 Palmer, Restitution §§ 5.4, 5.8 (1978). See also Goetz & Scott, supra, 577. A liquidated damages clause allowing the seller to retain 10 percent of the contract price as earnest money is presumptively a reasonable allocation of the risks associated with default. See *Wilkins* v. *Birnbaum,* 278 A.2d 829, 831 (Del. 1971);

---

[2] Section 388 of the Restatement (Second) of Contracts (Tent. Draft No. 14, 1979) provides: "RESTITUTION IN FAVOR OF PARTY IN BREACH. (1) Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred on the injured party by way of part performance or reliance.

(2) To the extent that, under the manifested assent of the parties, a party's performance is to be retained in the case of breach, that party is not entitled to restitution if the value of the performance as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss."

*Oliver* v. *Lawson,* 92 N.J. Super. 331, 336, 223 A.2d 355 (1966) ; 1 Palmer, supra, § 5.1, p. 587.[3]

The presumption of validity that attaches to a clause liquidating the seller's damages at 10 percent of the contract price in the event of the purchaser's unexcused nonperformance is, like most other presumptions, rebuttable. The purchaser, despite his default, is free to prove that the contract, or any part thereof, was the product of fraud or mistake or unconscionability. Cf. *Hamm* v. *Taylor,* 180 Conn. 491, 495–96, 429 A.2d 946 (1980). In the alternative, the purchaser is free to offer evidence that his breach in fact caused the seller no damages or damages substantially less than the amount stipulated as liquidated damages. See *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,* supra, 689.

The trial court concluded that the plaintiff purchasers had successfully invoked the principle of *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.* by presenting evidence of increase in the value of the real property between the date of the contract of sale and the date of the trial. That conclusion was in error. The relevant time at which to measure the seller's damages is the time of breach. *Zirinsky* v. *Sheehan,* 413 F.2d 481, 489 (8th Cir. 1969) ; *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 274, 320 A.2d 811 (1973). Benefits to the seller that are attributable to a rising market subsequent to breach rightfully accrue to the seller. *Beckley* v. *Munson,* 22 Conn. 299, 313

---

[3] We have, in another context, viewed 10 percent as a reasonable cutoff point to determine presumptively what inferences are to be drawn from ambiguous commercial undertakings. See *Granite Equipment Leasing Corporation* v. *Acme Pump Co.,* 165 Conn. 364, 368, 335 A.2d 294 (1973).

(1853); *Baffa* v. *Johnson,* 35 Cal. 2d 36, 39–40, 216 P.2d 13 (1950). There was no evidence before the court to demonstrate that the seller was not injured at the time of the purchasers' breach by their failure then to consummate the contract. Neither the seller's status as a developer of a condominium project nor the absence of willfulness on the part of the purchasers furnishes a justification for disregarding the liquidated damages clause, although these factors may play some role in the ultimate determination of whether the seller was in fact unjustly enriched by the down payment he retained.

Because the availability of, and the limits on, restitutionary claims by a plaintiff in default have not previously been clearly spelled out in our cases, it is appropriate to afford to the purchasers herein another opportunity to proffer evidence to substantiate their claim. What showing the purchasers must make cannot be spelled out with specificity in view of the sparsity of the present record. The purchasers may be able to demonstrate that the condominium could, at the time of their breach, have been resold at a price sufficiently higher than their contract price to obviate any loss of profits and to compensate the seller for any incidental and consequential damages. Alternatively, the purchasers may be able to present evidence of unconscionability or of excuse, to avoid the applicability of the liquidated damages clause altogether. The plaintiffs' burden of proof is not an easy one to sustain, but they are entitled to their day in court.

There is error, the judgment is set aside, and the case is remanded for further proceedings in conformity with this opinion.

In this opinion the other judges concurred.