[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION FACTS
On June 21, 1986, the plaintiffs and the defendants Jeffrey and Jan Schum entered into an agreement under the terms of which the plaintiffs agreed to purchase and the defendants to sell real property located at 1162 Woodtick Road, Wolcott.
The defendants were represented by a realty firm, of which the defendant David Pecevich was the principal.
The sale was never consummated and the plaintiffs brought suit in three counts, first alleging a breach of contract against the defendant Schums. In the second count, they seek a return of their deposit from all three defendants. The third count is directed against David Pecevich and seeks damages for misrepresentations allegedly made by this defendant.
 I.
The dispute between the buyers and the sellers resulted from conflicting interpretations of the sales agreement. While the basic agreement is in the usual form and suggests no ambiguity, an addendum prepared at the same time as the basic agreement was construed differently by the plaintiffs and the defendants. CT Page 1557
The addendum is referred to in the basic agreement under "other conditions, if any. . ." and reads as follows:
 1. Contingent upon Sellers acquiring a Certificate of Occupancy on their new home.
 2. Closing must take place on or before Jan. 20, 1987.
 3. Said damage in carpets (holes) and plastic porch cover will be restored by Sellers by Closing date.
The plaintiffs construed the addendum to mean that the closing would take place no later than January 20, 1987 and that the sellers would have until that date to secure a certificate of occupancy for the house they were building and were to move into upon the sale of Woodtick Road.
The Schums felt that what was intended via the addendum was a guarantee that they would not be "put out on the street" if their new house was not ready. However, the defendant Jeffrey Schum testified that he was never advised that he had to close by January 20, 1987 or be in breach of the contract. He said he would have moved rather than be in default. The defendant Pecevich, on the other hand, understood the addendum he had prepared to, in effect, negate the contract if the certificate of occupancy had not been obtained by the January 20, 1987 closing date. The plaintiffs could then have their money back and that would be the end of the matter, as he understood it. If they wished, they could wait for the Schums to obtain their certificate of occupancy.
The court is obliged to interpret the addendum as it is written unless it is ambiguous. The only way paragraphs one and two are compatible is to assume they mean what they say, that is, that the defendants need not close until they have their certificate of occupancy, but in no event can they expect to delay the closing beyond January 20, 1987.
To adopt Mr. Pecevich's interpretation, the court would be adopting a premise that is untenable — that the plaintiffs were obliged to purchase the property by the closing date, but the defendant Schums had no obligation and simply by failing to obtain a certificate of occupancy by January 20, 1987, they could negate the contract.
The court chooses to adopt the interpretation "which is more CT Page 1558 equitable, reasonable and rational." Game-A-Tron Corp. v. Gordon,2 Conn. App. 692 (1984).
Further, it is generally accepted that when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it. Sturman v. Socha, 191 Conn. 1, 9 (1983), citing Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135, 145-146 (1973). Similarly, the language of a contract is typically construed most strongly against the party whose language it is and for whose benefit it was inserted. Sturman v. Socha, supra, 9.
The addendum was drafted by Mr. Pecevich, the agent of the sellers and hence its authorship is imputed to them.
Though neither Mr. nor Mrs. Schum felt they had breached the agreement and relied on Mr. Pecevich's assurances that they needn't close till they obtained a certificate of occupancy, their failure to close by January 20, 1987 constituted a breach of the sales contract of which the addendum was a part.
The Schums cannot avoid their legal responsibilities by placing all of the blame on the defendant Pecevich. There is no evidence to support the claim that the addendum was prepared solely to protect the plaintiffs and at their request. Rather, the evidence was that its purpose was to keep the Schums from having to move before their new house was ready.
The Schums also allege misrepresentations were made by Mr. Pecevich without their knowledge. Yet, Mrs. Schum testified that "David knew exactly what was going on," referring to the unexpected and even bizarre events which were delaying the construction of their new house. While they may have been foolish to rely on Mr. Pecevich's assurances, they chose the course of action.
Further, Mr. Pecevich was hired by the Schums to sell their house. Thus, he was acting as their agent during the drawn out negotiations. While he was "fending off" questions raised by the plaintiffs about the closing, he was also in touch with Mr. Mrs. Schum and told them to get an attorney. He admitted that Mrs. Schum was asking him what to do and he attempted to reach their attorney to discuss the matter.
There is ample evidence to support the plaintiffs' position and the defendants Jeffrey and Jan Schum are found to have breached their contract of sale for the Woodtick Road property.
The court having found in favor of the plaintiffs on the first count, it follows that the plaintiffs must prevail on the CT Page 1559 second count, and they are thus entitled to a return of their deposit.
The issues of damages on these counts will be taken up after the court addressed the third count.
 II.
The third count is directed against the defendant Pecevich for alleged false representations made to the plaintiffs and on which they relied to their detriment.
The court does not believe Mr. Pecevich made false representations to induce the plaintiffs to enter into the contract for the purchase of the Schums' property. However, his repeated assurances made subsequently that all was well and that the closing would take place on schedule misled the plaintiffs and caused them to expend sums and incur expenses.
From his conversations with Mrs. Schum, Mr. Pecevich knew of the problems the sellers were having and was aware that solving these problems would take time — well beyond the January closing date.
Mr. Pecevich admitted that he wanted "to save the deal" and thus continued to placate and reassure the plaintiffs. He did not, however, tell them the truth so they could make an informed decision. There were several opportunities for him to do so and these were crucial moments for the plaintiffs.
On this count, the court finds for the plaintiffs.
 III. A.
The plaintiffs claim out of pocket losses due to their inability to close on schedule. They paid $250 as a fee to accompany their mortgage application. The mortgage commitment was never exercised. Also, because the closing was delayed, Mrs. Vonwerder had to pay $380 to her landlord to extend her occupancy of the apartment she had expected to vacate to move into the Wolcott house.
 B.
The plaintiffs are also entitled to damages for the loss of their bargain. The measure of damages for breach of contract of sale is the difference between the contract price and the value of the property at the time and place of the breach, together with CT Page 1560 interest. Makusevich v. Gotta, 107 Conn. 207, 209 (1928); Vines v. Orchard Hills, Inc., 181 Conn. 501, 513 (1980).
To address this item, it is necessary to determine the date of the breach. The plaintiffs suggest the breach occurred in February of 1987, on the theory that the closing was to occur on January 20, 1987 but that a 30 day period within which to close is reasonable. No authority for this position was offered. The court therefore concludes that the date of January 20, 1987 is the date of the breach, the first date on which the closing could have occurred under the contract.
The testimony of Mr. Pecevich may be resorted to for evidence of the value of the property on the date of the breach. Mr. Pecevich is a real estate agent and professed to be knowledgeable about real estate values in the area.
He stated that he felt that the property in question had increased in value by $30,000 by August 21, 1987, seven months after the breach. In other testimony, he stated that generally, real estate values during this period increased by one to two percent a month. The contract price on June 21, 1986, seven months before the breach was $109,900. One could reasonably argue that if the total increment after fourteen months was $30,000, the increment at the midpoint (the date of the breach) would be $15,000.
Considering Mr. Pecevich's estimate that in general, values increased one to two percent per month, $15,000 is equivalent to an increase of slightly less than two percent per month.
The court finds the value of the plaintiffs' "loss of bargain" to be $15,000. ". . .contract damages may be based on reasonable and probable estimates". Bertozzi v. McCarthy,164 Conn. 463, 468 (1973).
 C.
The plaintiffs also claim damages in the amount of $210,834 because they are "in a significantly worse position then they would have been had the contract been performed."
This figure represents the difference between the total of all the monthly payments on their present mortgage and the total of those on the mortgage they planned to place on the Schum property. Thus, with a difference of $585.65 per month between the two monthly payment schedules, and both mortgages being for 30 year terms, the plaintiffs claim a "loss" of $210,834 because of the failure to purchase the Wolcott property of the Schums. CT Page 1561
While the plaintiffs' argument on this point is ingenious, the claim must be denied. The plaintiffs did not prove that their present house is virtually the same as the lost bargain, that marked conditions created the price increment, and that the additional cost is not due to the replacement of the Schum property with a property which was more valuable than the Schum property on January 20, 1987.
CONCLUSION
The remaining issue in this case is that of determining how the items of damage should be allocated between the defendants, i.e., Mr. Mrs. Schum on the one hand and their agent, Mr. Pecevich on the other. Though there are separate counts, the fact is that in view of the court's findings, many items of damage are attributable to the action of both the Schums and Mr. Pecevich.
It is the conclusion of the court that judgment should enter as follows:
1. As to counts 1 and 3, in favor of the plaintiffs and against the defendants Jeffrey Schum, Janice Schum and David Pecevich, jointly and severally, for the sum of $15,630 plus interest at the legal rate from January 20, 1987.
2. As to count 2, in favor of the plaintiffs and against the defendants Jeffrey and Janice Schum and David Pecevich jointly and severally, for the sum of $3,297 plus interest at the legal rate from January 20, 1987.
3. As to count 3, punitive damages in the form of attorneys' fees in favor of the plaintiffs and against the defendant David Pecevich for the sum of $6,000.
ANTHONY V. DeMAYO