[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AND MOTION TO REDUCE VERDICT ON MOTION TO SET ASIDE VERDICT
This case was presented to the jury on theories of breach of contract and professional negligence whereby plaintiff claimed improper design of a dock installed at his dwelling in Noank, Connecticut. Plaintiff received a verdict from the jury in the amount of $21,750.00. The court, for reasons set forth contemporaneously with that decision, awarded counsel fees of $12,887.50. Defendant moves to "set aside or to reduce the verdict, and those motions are denied.
Construing plaintiff's evidence in the light most favorable to the sustaining of the jury's verdict, plaintiff's evidence showed that CT Page 11254 defendant designed a dock which was unstable and not in accordance with standard engineering practice. At the time the dock was designed a restrictive covenant limited the size of the dock to 6 feet by 25 feet and did not permit the dock to be moored other than with anchors and chains. The defendant, being aware of the practice of the Department of Environmental Protection (DEP) in effect at the time of the initial engagement, recommended an even smaller dock, a 100 square foot dock, since that was the maximum dock being permitted by DEP in the absence of extraordinary circumstances.
At the start of trial defendant moved in limine to preclude any evidence of the necessity for a larger dock, on the grounds that it would not have been possible to permit or build such a dock. Defendant's objection missed the point. It was the plaintiff's claim that the defendant should have done stability calculations for the dock which was designed (it was admitted that such calculations were not done) and upon discovering the fact that the dock would not be stable, should have dealt with the issue by enlarging the dock or, as was actually done with very little difficulty, getting the small number of neighbors involved in the restrictive covenant to increase the permitted dock size to 160 square feet. Incidentally, that second modification to the restrictive covenant (Plaintiff's Exhibit 14) permits the use of stabilizing bars, or struts, as a method of stabilization of the dock, but that modification was not executed until after defendant completed its work. Plaintiff's expert testimony was clear, however, that it was defendant's professional duty to have not designed the dock at a size at which it was going to be unstable, but rather to have designed the dock as large as it needed to be and then proceed to obtain the necessary permits, if possible. Thus the evidence as to the need for a larger dock was properly before the jury on the issue of liability, and no request was made to admit the evidence only for a limited purpose.
It is axiomatic that damages for breach of contract are that sum which will put the injured party in the position in which he would have been had the contract been performed. Stated another way, the damages for breach of contract are designed to "make plaintiff whole". Although there was a general verdict on both tort and contract causes of action, the tort damages in this case cannot, as a matter of law, be larger than the contract damages, given the particular facts of this case. In plaintiff's final argument to the jury, made without objection from defendant, plaintiff asked the jury for the sum of $4,000.00 for struts, which the court understands to be stabilizing bars which were not permitted until the second modification agreement was executed. Plaintiff's counsel also argued for the cost of a 160 square foot dock, although obviously the material costs for a dock of 160 square feet should be reduced by some 20% to reach the material costs of a dock of 125 square feet. Clearly, if CT Page 11255 the defendant failed to design a proper dock, and if, as a result of that failure, plaintiff expended $20,000.00 and ended up with a dock that was neither safe nor stable and was not repairable, no one could deny that plaintiff should receive his $20,000.00 back. On the other band, if the only way to produce a proper dock was at a cost of $100,000.00, no one could seriously argue that defendant was liable to plaintiff for that amount, because that would give plaintiff a $100,000.00 dock at an expenditure of only $20,000.00. Such a windfall of $80,000.00 is vastly beyond the measure of contract damages in Connecticut. See Vines v.Orchard Hills, Inc., 181 Conn. 501 (1980).
However, the uncontradicted evidence of plaintiff was that he expended $19,768.12 as of August 11, 1997 for his dock (Plaintiff's Exhibit 45). The jury was entitled to conclude that the entire dock had to be removed and replaced. One of plaintiff's witnesses testified that the cost to remove the dock would be approximately $1,000.00 and that estimate was given in the context of a contractor coming in to construct a new dock. The jury could logically have concluded that the cost of removing the dock alone (without the savings inherent in bringing a work crew to the site to accomplish several tasks, rather than one) could well be double that amount. Thus, even if the court were to adopt defendant's argument that the jury could not have legally compensated plaintiff for the cost of stabilizing bars and a larger dock than permitted at the time of the contract, the jury was entitled to reach a slightly larger figure than the amount of the verdict by simply putting Mr. Wells in the same position that he was before the contract, i.e., the dock gone and all of his money returned.
For the foregoing reasons the motion to set aside and/or to reduce the verdict is denied.
Koletsky, J.