******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELEFTERIOS TSIROPOULOS *v.* MARGARET M.
RADIGAN
(AC 37176)

Lavine, Beach and Sheldon, Js.

*Submitted on briefs December 15, 2015—officially released
February 16, 2016*

(Appeal from Superior Court, judicial district of
Stamford, Hon David R. Tobin, judge trial referee.)

*Peter V. Lathouris* and *Richard M. Breen* filed a brief
for the appellant (plaintiff).

*David Eric Ross* filed a brief for the appellee (defendant).

*Opinion*

LAVINE, J. This appeal concerns a seller's right to liquidated damages due to a would-be buyer's breach of a residential real estate sales agreement. The plaintiff, Elefterios Tsiropoulos, appeals from the judgment of the trial court rendered in favor of the defendant, Margaret M. Radigan. On appeal, the plaintiff claims that the court improperly (1) determined that the liquidated damages clause in the agreement was enforceable and (2) found that his failure to perform was wilful and that the defendant was not unjustly enriched. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the plaintiff's claims. On or about October 1, 2012, the parties signed a written contract (agreement) whereby the plaintiff agreed to purchase and the defendant agreed to sell the premises located at 6 Cardinal Lane in Westport (premises). The agreed upon sale price was $716,000. The plaintiff made a $30,000 deposit and was to pay the balance of $686,000 at the closing on November 16, 2012. Although the plaintiff needed to secure financing to purchase the premises, he waived financing as a contingency to his purchase of the premises[1] to secure the ability to purchase the premises over others who wanted to purchase the premises, but for whom financing was a contingency. The plaintiff, however, was unable to obtain a mortgage acceptable to him. On December 7, 2012, the plaintiff's attorney informed the defendant that he was unable to close[2] and encouraged the defendant to sell the premises to someone else. On December 28, 2012, the defendant sold the premises for $720,000. Thereafter, the plaintiff demanded that the defendant return his $30,000 deposit, but the defendant refused in reliance of paragraph 16 of the agreement.[3]

On or about January 14, 2013, the plaintiff commenced the present action, which sounds in breach of contract and unjust enrichment, to recover the $30,000 deposit.[4] The defendant denied the material allegations of the complaint and, in an amended answer, asserted three special defenses: the plaintiff terminated the agreement wilfully, breached the covenant of good faith and fair dealing, and had unclean hands. The defendant also pleaded a counterclaim seeking to retain the $30,000 deposit and to recover attorney's fees.[5] The parties tried the case to the court in May, 2014, at which time the plaintiff attempted to prove that his failure to close was not wilful because he had relied on the advice of mortgage brokers and lenders to waive a finance contingency.

The court issued its ruling from the bench, stating in part: "In the first instance, we have a presumptively valid liquidated damages clause. It is for 4.2 percent as opposed to the customary 10 percent that was the subject matter in *Vines* v. *Orchard Hills*[, Inc., 181 Conn.

501, 512, 435 A.2d 1022 (1980)]. And given the fact that we had a $716,000 purchase price, $30,000 was a totally reasonable number to set as a liquidated damages in the event of the [plaintiff's] breach.

"The [plaintiff] knew that he was at risk. He knew that he was taking a calculated gamble that he could close. He did not think it was a gamble because he had been assured that he could get financing. But nevertheless, in order to have his bid accepted in comparison to others that were perhaps higher but contingent, he decided to make his bid noncontingent. And by doing so, he willingly entered into a contract. There's no indication that this contract was procured by any fraud or deception on the part of the [defendant]. The court cannot find that breach was unwilful. . . .

"[T]he plaintiff in this matter had every expectation that he could obtain financing at a very high degree of leverage: 97 percent. And he has had experience in the past in leveraging properties. And he knew that he had significant obligations under prior notes, under prior mortgages he had taken advantage of the ability and the willingness of banks to lend money so as to allow him to build through his diligent efforts a substantial amount of real estate holdings. He was not an unsophisticated person in this regard. He decided to take advantage in this case . . . of the perceived availability of FHA funds, which would allow him to obtain ownership of the [premises] with a very small . . . out-of-pocket investment in case, using borrowed funds for the purchase price.

"When he signed the contract without a mortgage contingency clause, he took the risk that he would be able to fulfill his desires as he set out to. And unfortunately, it took him some time before he knew or should have known that proceeding in that fashion would probably lead to his inability to perform the contract in accordance with his obligations. The first notice probably should have come when [the bank] indicated that they could not fund the loan without him changing his balance sheet to their liking. He, instead of recognizing that this was a problem with FHA loans, he chose to blame it on that particular lender, and to pursue financing through a mortgage broker that was recommended to him, but there's no evidence that he had previously worked with that mortgage lender, only to find out that despite the fact they were willing to finance at the rate of 97 percent, they were only willing to finance 97 percent of a very, very conservative appraisal of the [premises.]

"[The plaintiff] decided or opted not to try to fulfill his obligations by seeking more conventional financing. And in that regard, he put himself in the state that he found himself in, where he was unable to perform the contract on November 16, as he was obligated to do. He had three weeks within which he could have taken

steps to apply for different financing, and perhaps pursue other goals. Instead, the only step apparently he took was to try to appeal [an] appraisal on the basis of comparables. [It d]oes not seem to the court that that was an avenue that would normally yield a banker changing its mind and agreeing to underwrite a loan that they had rejected.

"So, under those circumstances the court finds first of all, that this was not an unavoidable, unwilful breach. It was one that was part and parcel of the course that the parties embarked on from the beginning. It was well known to both of them. And it was a risk that the plaintiff took."[6] The court found for the defendant on the plaintiff's breach of contract and unjust enrichment counts. The court found for the defendant on her counterclaim and ordered that she retain the $30,000 deposit.[7] After the parties stipulated to the amount of attorney's fees and judgment was rendered, the plaintiff appealed.

I

The plaintiff's first claim is that the court improperly enforced the liquidated damages clause because it conflicts with the "essential precepts of Connecticut contract law." We disagree.

The plaintiff argues that a contract provision that fixes liquidated damages for breach of contract is enforceable if it satisfies certain conditions; but that a liquidated damages provision that imposes a penalty is contrary to public policy, and therefore, is invalid. See *Berger* v. *Shanahan*, 142 Conn. 726, 731, 118 A.2d 311 (1955). "A provision for liquidated damages . . . is one the real purpose of which is to fix fair compensation to the injured party for a breach of contract. In determining whether any particular provision is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase 'liquidated damages' or the word 'penalty' is used. Rather, that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of the breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 306–307, 869 A.2d 1198 (2005), quoting *Berger* v. *Shanahan*, supra, 142 Conn. 731–32.

The essence of the plaintiff's claim is that the defendant suffered no damages as a result of his breach, and therefore, the court improperly permitted the defendant to retain the $30,000 deposit. In rendering its decision, the court stated: "With respect to the liquidated damages clause . . . the evidence that [the court] has seen regarding actual damages is incomplete and inconclusive. The burden was on the plaintiff to show that those actual damages were so disproportionate or nonexistent as to render the clause a penalty clause. The court finds specifically that the plaintiff has failed to satisfy that burden. So, the court finds that the liquidated damages clause is enforceable and valid."

In contract, where the purchaser is in default, as is the plaintiff in the present case, the defaulting party has the "burden of showing that the clause is invalid and unenforceable." *Vines* v. *Orchard Hills, Inc.*, supra, 181 Conn. 512. We have reviewed the record and conclude that it supports the finding of the trial court.[8]

In support of his appellate claim, the plaintiff relies on *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.*, 153 Conn. 681, 220 A.2d 263 (1966), in which our Supreme Court concluded that a $100,000 liquidated damages clause of the parties' contract was not enforceable where no damages were suffered by the nonbreaching party. Although the defendant breached its contract with the plaintiff, the plaintiff's business continued uninterrupted and as usual. Id., 690. The plaintiff suffered no damages and, therefore, was not entitled to liquidated damages. Id. "[N]o provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court sees that no damages has been sustained." (Internal quotation marks omitted.) Id., 688. The present case is distinguishable because the trial court found that the plaintiff had failed to prove that the defendant did not suffer actual damages.[9]

With regard to the breach of a contract for the sale of real property, a "seller's damages . . . include not only his expectation damages suffered through loss of his bargain, and his incidental damages such as broker's commissions, but also less quantifiable costs arising out of retention of real property beyond the time of the originally contemplated sale." *Vines* v. *Orchard Hills, Inc.*, supra, 181 Conn. 512. "It is not unreasonable . . . to presume that a liquidated damages clause that is appropriately limited in amount bears a reasonable relationship to the damages that the seller has actually suffered." Id. "A liquidated damages clause allowing the seller to retain 10 percent of the contract price as earnest money is presumptively a reasonable allocation of the risks associated with default." Id. In the present case, the $30,000 down payment was considerably less than 10 percent of the offering price of $716,000, and

therefore presumptively reasonable.

As to the plaintiff's claim that the defendant was able to sell the premises for $4000 more than his offering price, "[t]he relevant time at which to measure the seller's damages is the time of breach. . . . Benefits to the seller that are attributable to a rising market subsequent to breach rightfully accrue to the seller." (Citations omitted.) Id., 513. Although the court made no such finding, there is evidence in the record that the person who eventually purchased the premises originally had offered to pay $5000 more for the premises during what we presume was a bidding war.

For the foregoing reasons, we conclude that the court properly determined that the liquidated damages clause was valid and enforceable.[10]

## II

The plaintiff's second claim is that the trial court improperly found that he had breached the agreement wilfully and that the defendant was not unjustly enriched. We disagree.

"[A] purchaser whose breach is not willful has a restitutionary claim to recover moneys paid that unjustly enrich his seller." Id., 509. The essence of the plaintiff's claims on appeal is the same as it was in the trial court, that is, that he should be excused from having breached the agreement because he could not secure financing and the defendant suffered no damages because she was able to sell the premises within weeks of his breach. We are not persuaded.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Francisco R.*, 111 Conn. App. 529, 535–36, 959 A.2d 1079 (2008).

## A

In the present case, the court found that the plaintiff's breach was "not unwilful." "'Willful' as a term of art requires more than a finding of deliberate action. The contemporary view is that the court must consider not only the deliberateness of the breach, but also other factors in determining whether to apply the court's equitable jurisdiction. . . . These factors include, among others, the degree of innocence of the breach, the amount of the detriment to the breaching party and the

amount of the benefit conferred upon the nonbreaching party." (Citation omitted.) *Stabenau* v. *Cairelli*, 22 Conn. App. 578, 581–82, 577 A.2d 1130 (1990).

On the basis of our review of the court's oral decision and the record, we conclude that the court did not err when it found that the plaintiff's breach of the contract was wilful, in that there is evidence that he deliberately took the risk of entering into the agreement without the funds to consummate the sale and without reserving a financing contingency. It appears from the record that a number of persons were interested in purchasing the premises. In order to foreclose others from winning what may have become a bidding war, the plaintiff waived any financing contingency to secure his bid. Not only did the plaintiff place himself at risk by waiving the finance contingency, he sought a highly leveraged mortgage of 97 percent of the purchase price. When he was unable to obtain such a mortgage from his preapproved conventional lender and the mortgage offered to him by another lending institution was too little, he failed to pursue other means of financing. The plaintiff was not a novice in the real estate business. He took a calculated risk in an effort to outbid his competition for the premises. The plaintiff's breach of the agreement was not wilful because he could not obtain a mortgage, but because he wilfully waived a financial contingency that put not only him, but also the defendant, at financial risk. The trial court, therefore, did not err when it found that the plaintiff's breach of the agreement was wilful.

On appeal the plaintiff argues that the trial court's decision is contrary to Connecticut law because it is not consistent with our Supreme Court's decision in *Vines* v. *Orchard Hills, Inc.*, supra, 181 Conn. 501. The factual circumstance of the purchasers' breach in *Vines* is inapposite to the facts of the present case. In *Vines*, the husband and wife would-be purchasers withdrew their offer to buy a condominium in New Canaan from the developer seller because the husband's employer transferred him to New Jersey. Id., 503. Our Supreme Court stated that "a purchaser whose breach is not willful has a restitutionary claim to recover moneys paid that unjustly enrich his seller. In this case, no one has alleged that the purchasers' breach, arising out of a transfer to a more distant place of employment, should be deemed to have been willful." Id., 509–10; see also *Stabenau* v. *Cairelli*, supra, 22 Conn. App. 582 (breach prompted by fear that named plaintiff would lose job and not be able to make payments required for purchase of property; named plaintiff did not deliberately place job in jeopardy for purpose of avoiding contract). In both *Vines* and *Stabenau* neither would-be purchasers voluntarily put themselves in the position to breach the contracts of sale. In the present case, however, the plaintiff voluntarily waived the finance contingency that put him at risk of not being able to close on the sale of the premises.

B

The plaintiff also claims that the trial court erred when it found that the defendant was not unjustly enriched. It was the plaintiff's burden to "demonstrate that the property could, at the time of [his] breach, have been resold at a price sufficiently higher than [the] contract price to obviate any loss of profits and to compensate the seller for any incidental and consequential damages." (Internal quotation marks omitted.) *Stabenau* v. *Cairelli*, supra, 22 Conn. App. 583; see also *Vines* v. *Orchard Hills, Inc.*, supra, 181 Conn. 510 (plaintiff's burden to establish defendant unjustly enriched).

The trial court found that the plaintiff failed to meet his burden to demonstrate that the defendant would be unjustly enriched by retaining the plaintiff's $30,000 deposit. We review the trial court's findings of fact by a clearly erroneous standard. See *Lynch* v. *Lynch*, 13 Conn. App. 433, 436–37, 537 A.2d 503 (1988). On the basis of our review of the record, the parties' briefs, and arguments before us, we cannot conclude that the court's finding was clearly erroneous.[11] Moreover, the plaintiff's claim for restitution fails because his breach of the agreement was wilful.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Paragraph 17 of the agreement states: "MORTGAGE CONTINGENCY. This Agreement is not contingent upon BUYER obtaining financing for the purchase of the subject premises."

[2] When the plaintiff informed the defendant that he was unable to close at the contract price, he offered to purchase the premises at a lower price.

[3] Paragraph 16 of the agreement provides in part: "DEFAULT. If BUYER is in default hereunder, or, on or before the date of closing as set forth herein, indicates that BUYER is unable or unwilling to perform and SELLER stands ready to perform SELLER"S obligations, SELLER's sole remedy shall be the right to terminate this Agreement by written notice to BUYER or BUYER's attorney and retain the down payment as reasonable liquidated damages for BUYER's inability or unwillingness to perform. It is the intention of the parties hereto freely to make advance provision on the date of the Agreement for such event in order (a) to avoid controversy, delay and expense, and (b) to specify now a reasonable amount agreeable to both for compensation to the SELLER for losses which may not be readily ascertainable or quantifiable, such as any of the following which might be necessary to place SELLER in the position SELLER would have been in had BUYER made timely performance . . . ."

[4] The deposit was being held in escrow by Attorney W. Glenn Major.

[5] Paragraph 37 of the agreement states: "COSTS OF ENFORCEMENT. Except as otherwise expressly provided herein, in the event of any litigation brought to enforce any material provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and court costs from the other party."

[6] The court did not reach the issue of unjust enrichment.

[7] The parties were to appear before the court at a later time to present evidence as to reasonable attorney's fees. On August 20, 2014, the parties filed a stipulation of attorney's fees in the amount of $20,000.

[8] The defendant presented evidence to prove that she sustained more than $24,000 in damages as a result of the plaintiff's breach.

[9] In her brief, the defendant has identified the evidence of the expenses she incurred as a result of the plaintiff's having breached the agreement. A summary of her alleged damages was marked as an exhibit and is included in the appendix of her brief. The court, however, made no specific finding with respect to that evidence, and the plaintiff failed to ask the court to articulate its factual findings as to damages. See Practice Book §§ 60-5 and

61-10. We presume, therefore, that the court properly applied the law to the facts of the case. See *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 9, 826 A.2d 1088 (2003).

[10] See also *Peterson* v. *McAndrew*, 160 Conn. App. 180, 193–94, 125 A.3d 241 (2015) (enforcing liquidated damages clause pursuant to *American Car Rental, Inc.*, v. *Commissioner of Consumer Protection*, supra, 273 Conn. 306–307).

[11] The defendant presented evidence that a second buyer offered $725,000 to purchase the premises but that she accepted the plaintiff's noncontingency offer of $716,000.

―――――――――――――――――――――