AMERICAN CAR RENTAL, INC. *v.* COMMISSIONER OF CONSUMER PROTECTION
(SC 17241)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued January 3—officially released April 12, 2005

*Max F. Brunswick*, with whom was *Richard C. Marquette*, for the appellant (plaintiff).

*Richard Blumenthal*, attorney general, with whom were *Garry Desjardins*, assistant attorney general, and, on the brief, *Phillip Rosario*, assistant attorney general, for the appellee (defendant).

*Opinion*

BORDEN, J. The principal issue in this appeal is whether the $150 speeding fee charged by the plaintiff,

American Car Rental, Inc., to a customer each time the customer's rental vehicle exceeded seventy-nine miles per hour continuously for two minutes or more represented a valid liquidated damages charge or an illegal penalty. The plaintiff appeals from the judgment of the trial court, dismissing its administrative appeal of the final decision and order of the defendant, the commissioner of consumer protection, who had determined that the speeding fee constituted an illegal penalty and was an unfair trade practice offensive to public policy. The plaintiff claims that: (1) the speeding fee represented a valid liquidated damages charge; and (2) that the trial court improperly placed the burden of proof on the plaintiff during the administrative appeal. We affirm the judgment of the trial court.

The defendant filed an administrative complaint against the plaintiff alleging that the speeding fee and insufficient notice thereof violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Following a hearing, the designated hearing officer issued a proposed final decision, which contained findings of fact and conclusions of law. After the parties were given the opportunity to file exceptions to the hearing officer's proposed final decision, the defendant heard oral argument. The defendant adopted the hearing officer's findings and conclusions in their entirety, and issued a final decision prohibiting the plaintiff from charging the speeding fee in the absence of first satisfying certain conditions set by the defendant and ordering the plaintiff to refund all speeding fees assessed up to the date of the decision. The plaintiff appealed from the defendant's final decision to the Superior Court, which dismissed the appeal and rendered judgment for the defendant. This appeal followed.[1]

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court. Upon the defendant's motion, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

The record reveals the following facts and procedural history. The plaintiff, which engages in the business of renting automobiles to the general public, installed global positioning system (GPS) devices in its vehicles to track each vehicle's speed and location.[2] After installing the devices, the plaintiff added the following language to a list of policy statements located at the top of its rental agreement form: " 'Vehicles driven in excess of posted speed limit will be charged $150 fee per occurrence. All our vehicles are GPS equipped.' " The plaintiff subsequently replaced " 'posted speed limit' " with "[seventy-nine miles per hour]" in the policy language. Initially, the rental agreement contained no further explanation of the policy, no definition of "occurrence" or "GPS," and no place on the agreement for the customer to acknowledge an understanding of the speeding fee policy. Although some customers received a verbal explanation of the policy, other customers did not.

The plaintiff's speeding fee policy worked as follows. Whenever a vehicle's installed GPS device calculated that the vehicle had been exceeding seventy-nine miles per hour for two minutes or longer, the device, using wireless technology, transmitted the vehicle's location and speed to AIR IQ Company, which, in turn, faxed the information to the plaintiff. Exceeding the threshold speed of seventy-nine miles per hour for two minutes or longer constituted a single "occurrence" pursuant to the policy regardless of how long the vehicle remained

[2] The GPS device receives signals from a system of satellites that orbit the earth. Each satellite transmits a discrete, identifiable signal that contains time information and other data. The device uses the data to compute the satellite location and the difference in time between the signal broadcast and signal reception to calculate its distance from the satellite. The device uses the information from a minimum of three satellites to compute its own position. The device then computes the vehicle's speed by measuring its change in location over a discrete period of time. Microsoft Encarta Online Encyclopedia (2005) at http://encarta.msn.com/encyclopedia_761579727/Global_Positioning_System.html.

above the threshold speed. Each time the vehicle decelerated below the threshold speed, however, any subsequent acceleration above that speed detected by the GPS device for two minutes or longer constituted another "occurrence." For example, it constituted a single occurrence irrespective of whether the vehicle traveled at eighty miles per hour for a continuous two minute period or for a continuous thirty minute period. If, in the latter case, however, the vehicle decelerated to seventy-five miles per hour after the first fifteen minutes, remained at that speed for five minutes, then accelerated to eighty-five miles per hour for ten minutes, the device would detect two separate "occurrences."

Pursuant to the plaintiff's speeding fee policy, it charged the customer $150 for each "occurrence." Thus, it charged $150 to a customer who exceeded the threshold speed for a continuous thirty minute period, whereas it charged $300 to a customer who exceeded the threshold speed for the same thirty minutes but with a single deceleration below the threshold speed followed by an acceleration above the threshold speed during the thirty minutes. Furthermore, the customer, while driving, received no indication that the GPS device was transmitting information, and the plaintiff charged the speeding fee to the customer's credit or debit card, if one was on file, without further notice to the customer. This practice meant that some customers were unaware that the fee had been charged to their account until they returned the rental vehicle and received their receipt. Consequently, the credit or debit cards of some customers were rejected by retailers because the speeding fee resulted in their credit limit being exceeded or their bank account being overdrawn without their knowledge.

As a result of a consumer complaint, the department of consumer protection conducted an investigation of

the plaintiff's speeding fee policy. That investigation resulted in a two count administrative complaint, filed by the defendant, alleging that the plaintiff's speeding fee policy violated CUTPA. The first count alleged that the plaintiff: (1) failed to disclose adequately the purpose of the GPS device in a manner that consumers would understand; (2) misrepresented or misled consumers concerning its intended use of the GPS device; (3) failed to notify consumers that they had been charged the speeding fee; (4) failed to provide consumers who had been charged the speeding fee an opportunity to refute the alleged violation of the plaintiff's policy; and (5) failed to notify consumers that the speeding fee would be charged against their credit or debit cards. The second count alleged that the provision for the speeding fee constituted a penalty clause in the rental agreement contract.

The defendant subsequently designated a hearing officer, who conducted a series of three, one day hearings wherein both parties presented witnesses and submitted evidence. With respect to the issue of notice, the hearing officer heard from customers of the plaintiff who claimed to have received a verbal explanation of the speeding fee policy, as well as those who claimed not to have received such an explanation. At the second hearing, the plaintiff submitted into evidence a revised rental agreement that included a box for the customer to initial to acknowledge having read and agreed to a separate addendum explaining the use of the GPS device, and a separate line item to document any assessment of the speeding fee. The plaintiff also presented testimony that the addendum explaining the use of the GPS device was located on the rental counter and available to customers upon request. With respect to whether the provision for the speeding fee represented a liquidated damages clause or a penalty clause, both parties presented expert testimony concerning the

amount of additional wear that could be caused by operating subcompact automobiles, such as the Plymouth Neons in the plaintiff's rental fleet, in excess of seventy-nine miles per hour, the ability to measure such wear, and the ability to attribute such wear to any particular instance of operating the vehicle in excess of seventy-nine miles per hour.

After completing the hearings and receiving additional briefs from the parties, the hearing officer issued a memorandum of proposed final decision that contained findings of fact and conclusions of law. The hearing officer found that: (1) operating subcompact automobiles at eighty miles per hour could cause increased wear to various vehicle components, resulting in an increase in maintenance and repair requirements[3] and a decrease in the vehicle's useful service life; (2) the amount of wear increases with increased speed and with increased time at a given speed; and (3) the amount of increased wear caused by high speed driving during a single rental period is too small to be measured. The hearing officer also found that a new Plymouth Neon costs approximately $14,000 and has an expected useful service life of 150,000 miles, which could be decreased up to 10 percent by occasional operation at eighty miles per hour and up to 50 percent by continuous operation at eighty miles per hour.

On the basis of these findings, the hearing officer calculated that the additional wear on a Plymouth Neon operated at eighty miles per hour for two minutes would

---

[3] The increase in maintenance and repair requirements would include more frequent engine oil changes, more frequent brake and tire replacements and the potential for additional repairs to components such as timing belts, water pumps, radiators, headlights, wheel bearings, ball joints and cylinder heads. The total cost of performing all of the additional maintenance and repair would be approximately $3500 over the entire service life of the vehicle.

be thirty-seven cents, assuming all factors in favor of upholding the reasonableness of the plaintiff's $150 speeding fee.[4] In light of these calculations, he concluded that the speeding fee was unreasonably disproportionate to any actual damages that might be suffered by the plaintiff as a result of a customer operating one of its rental vehicles in excess of seventy-nine miles per hour for more than two minutes continuously and, as such, represented an illegal penalty rather than a valid liquidated damages charge.

Prior to oral argument before the defendant, both parties were given an opportunity to file any exceptions to the hearing officer's memorandum of proposed final decision. The only exception filed by the plaintiff with regard to the hearing officer's conclusion that the fee was not a valid liquidated damages charge was that it was "seriously flawed" because it failed to take into account additional maintenance, as well as the cost of certain repairs necessitated by excessive speed such as cracked windshields and cracked headlights.

---

[4] The hearing officer assumed that the vehicle would be operated at eighty miles per hour for its entire useful service life, which would be reduced by 50 percent from 150,000 miles to 75,000 miles by such operation. He then assumed that a second vehicle would be purchased for $14,000 and driven in the same manner. Thus, two vehicles would be required to attain the 150,000 mile useful service life of a single vehicle operated at lower speeds. He further assumed that $3500 in additional service and repairs would be required for each of the two vehicles, the original and its replacement. So, the maximum additional wear that the vehicle would suffer as a result of operation at the higher speed would be equivalent to $3500 in additional service and repairs on the first vehicle, plus the $14,000 cost of purchasing the second vehicle, plus the $3500 in additional service and repairs on the second vehicle, for a total of $21,000. Over the 150,000 mile useful service life of a single vehicle operated at lower speeds, the vehicle's maximum wear would be fourteen cents per mile ($21,000/150,000 miles). A vehicle traveling at eighty miles per hour travels two and two-thirds miles in two minutes. Thus, the amount of additional wear attributable to operating the vehicle at eighty miles per hour for two minutes would be approximately thirty-seven cents (fourteen cents per mile times two and two-thirds miles).

Following oral argument, the defendant adopted the hearing officer's findings of fact and conclusions of law in their entirety and issued a final decision and order. That order directed the plaintiff to refund all speeding fees collected up to the date of the order, and to cease and desist immediately from charging the speeding fee unless the plaintiff satisfied four conditions: (1) substantiated that the amount of the speeding fee was reasonably related or proportionate to its anticipated harm; (2) clearly and conspicuously disclosed the amount of the speeding fee in writing in the rental agreement; (3) clearly and conspicuously disclosed in writing in the rental agreement the use of a GPS device for the purpose of tracking the rental vehicle's speed; and (4) obtained the customer's consent to the use of the GPS device for tracking the speed of the rental vehicle and to the amount of the speeding fee in writing immediately adjacent to the foregoing disclosures.

The plaintiff appealed from the defendant's decision and order to the Superior Court on the basis that the defendant abused his discretion and made findings that were clearly erroneous and against the weight of the evidence. The plaintiff argued that its latest contract clearly and fairly disclosed the speeding fee, and that the speeding fee constituted a valid liquidated damages charge. The trial court concluded that the speeding fee constituted an illegal penalty, which is contrary to public policy and, as such, a violation of CUTPA. Accordingly, the court declined to address whether the plaintiff's customers received adequate notice of the speeding fee because adequate notice of an illegal penalty would not justify its enforcement.

The plaintiff claims on appeal that the speeding fee constituted a valid liquidated damages charge that did not violate CUTPA because the damage caused by a single incidence of operating a vehicle in excess of seventy-nine miles per hour for more than two minutes

continuously are uncertain. The plaintiff also claims that the trial court improperly placed the burden on the plaintiff to prove that the speeding fee was a valid liquidated damages charge, rather than on the defendant to prove that the speeding fee was a penalty. Finally, the plaintiff urges this court to remand this matter to the trial court with direction to sustain the appeal and to determine which customers, if any, are entitled to a refund due to inadequate notice of the speeding fee policy. The defendant maintains that, as a penalty, the speeding fee violated CUTPA, and that the burden of proving that fact was placed properly on the defendant. We agree with the defendant.[5]

"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule[6] by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has

---

[5] Because we conclude that the speeding fee, as an illegal penalty, violated CUTPA, any assessment of the fee by the plaintiff was illegal, regardless of notice. Therefore, we need not remand the case to the trial court to determine which customers were given proper notice of the fee.

[6] We refer to the source of these criteria as the "cigarette rule" because they were initially articulated by the Federal Trade Commission in Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355 (1964); see *Siudyla* v. *ChemExec Relocation Systems, Inc.*, 23 Conn. App. 180, 186 n.2, 579 A.2d 578 (1990).

Although we consistently have followed the cigarette rule in CUTPA cases, we also note that, when interpreting "unfairness" under CUTPA, our decisions are to be guided, pursuant to General Statutes § 42-110b (c), by the Federal Trade Commission and federal court interpretations of the Federal Trade Act. Under those authorities, a serious question exists concerning whether the cigarette rule remains the guiding rule utilized by the Federal Trade Commission. See *American Financial Services Assn.* v. *Federal Trade Commission*, 767 F.2d 957, 969–70 (D.C. Cir. 1985); see also P. Sobel, "Unfair Acts or Practices Under CUTPA," 77 Conn. B.J. 105 (2003). Nevertheless, because neither party in the present case has raised or briefed this issue or asked us to reconsider our law in this area, it is appropriate that we wait until the issue has been squarely presented to us for determination.

been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 655–56, 850 A.2d 145 (2004).

With regard to the first criterion, "[t]he law is well established in this jurisdiction, as well as elsewhere, that a term in a contract calling for the imposition of a penalty for the breach of the contract is contrary to public policy and invalid, but a contractual provision fixing the amount of damages to be paid in the event of a breach is enforceable if it satisfies certain conditions." *Berger* v. *Shanahan*, 142 Conn. 726, 731, 118 A.2d 311 (1955). Thus, because a penalty clause in a contract is contrary to public policy, it violates the first criterion of the cigarette rule.

"A contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach. . . . A provision for liquidated damages, on the other hand, is one the real purpose of which is to fix fair compensation to the injured party for a breach of the contract. In determining whether any particular provision is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase 'liquidated damages' or the word 'penalty' is used. Rather, that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to

be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." (Citation omitted.) Id., 731–32.

The defendant concluded that the speeding fee was unreasonable because it was greatly disproportionate to the costs due to increased wear that might be expected from operating the plaintiff's vehicles at speeds in excess of seventy-nine miles per hour for two or more minutes continuously. In other words, the defendant concluded that the speeding fee significantly exceeded the damage that the plaintiff might be expected to incur as a result of a contract breach and, thus, constituted a penalty.

General Statutes § 4-183 (j)[7] of the Uniform Administrative Procedure Act establishes a restricted scope of judicial review of the defendant's final decision and

[7] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. . . ."

order. *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). Neither the trial court nor this court may substitute its own judgment for the defendant's as to the weight of the evidence on questions of fact. Id. Instead, we limit our inquiry to whether, in view of all of the evidence, the substantial rights of the plaintiff have been prejudiced because the administrative record lacked substantial evidence to support the defendant's findings of fact or because the defendant, in issuing his decision and order, "acted unreasonably, arbitrarily, illegally or in abuse of [his] discretion. . . .

"An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . .

"It is fundamental that a plaintiff has the burden of proving that the [defendant], on the facts before him, acted contrary to law and in abuse of his discretion . . . . The law is also well established that if the decision of the [defendant] is reasonably supported by the evidence it must be sustained." (Citations omitted; internal quotation marks omitted.) Id., 343–44.

The administrative record contains substantial evidence to support the defendant's decision. Although none of the experts was able to quantify the increased wear associated with a single incident of operating one of the rental vehicles at speeds in excess of seventy-nine miles per hour for two or more minutes continuously, their testimony revealed that periodic incidents of such operation over the vehicle's entire service life would decrease that service life only between 0 and 10 percent. Instead of using those estimates, which probably reflect actual vehicle use, the defendant used the

highest estimate given by any of the experts for a decrease in service life associated with continuous operation at high speeds, namely, 50 percent. Using the estimate most favorable to upholding the reasonableness of the plaintiff's speeding fee and assuming every possible cost associated with additional maintenance and repair mentioned by the experts, the hearing officer calculated the damage incurred by the plaintiff as a result of the operation of a rental vehicle at eighty miles per hour for two minutes at thirty-seven cents. See footnote 4 of this opinion. For that scenario, the $150 collected by the plaintiff was more than 400 times the potential damage incurred.

The trial court concluded that the record supported the defendant's determination that the plaintiff had violated CUTPA based solely upon this difference between the speeding fee and the potential damage incurred. In other words, the trial court concluded that the degree to which the speeding fee, because it was a penalty, violated public policy was sufficient to find a CUTPA violation without addressing the remaining criteria of the cigarette rule.[8] Because the trial court's conclusion that the degree to which the speeding fee violated a single criterion of the cigarette rule was sufficient to constitute a CUTPA violation implicates an interpretation of CUTPA, our scope of review of that conclusion is plenary. We review the factual findings that led to that conclusion, however, under a clearly erroneous standard. *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 367, 736 A.2d 824 (1999).

---

[8] The defendant concluded that the speeding fee policy had satisfied the remaining criteria of the cigarette rule, namely, that it was oppressive, and caused a substantial injury to customers, based partially upon a finding that the plaintiff's customers lacked adequate notice of the fee. The trial court declined to address the notice issue because it determined that the speeding fee itself was an unfair trade practice in violation of CUTPA without regard to whether the customers had notice of the fee.

Application of that scope of review leads us to conclude that the trial court properly concluded that the degree to which the speeding fee violated public policy was sufficient to find a CUTPA violation without addressing the remaining criteria of the cigarette rule. Under the cigarette rule, "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria . . . ." (Internal quotation marks omitted.) *Updike, Kelly & Spellacy, P.C.* v. *Beckett,* supra, 269 Conn. 656. Moreover, "[t]he purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy. . . . The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit."[9] (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.,* 245 Conn. 1, 42, 717 A.2d 77 (1998). As discussed previously in this opinion, the administrative record contains substantial evidence to support the underlying facts used by the trial court in reaching its conclusion. Furthermore, the public policy against penalty clauses in contracts is well established. The extent to which the plaintiff's speeding fee violated that public policy supports a CUTPA violation without having to establish that the fee also met the criteria of the remaining cigarette rule.

[9] The purpose and remedial nature of CUTPA provide the appropriate response to the claims of plaintiff's counsel at oral argument before this court that the legislature is the appropriate forum to determine whether the speeding fee violated public policy. The legislature's adoption of CUTPA requires the courts to determine whether specific activities constitute unfair trade practices on a case-by-case basis. The present case requires us to make that determination regardless of the legislature's decision whether to enact legislation concerning the ability of private companies to charge a speeding fee.

The plaintiff argues that the provision for the speeding fee did not violate the public policy against penalty clauses in contracts because the hearing officer assumed the life of a rental vehicle would be 150,000 miles at sustained high speeds, which resulted in the fourteen cents per mile cost of wear calculation being flawed. This argument is unsupported by the facts. The hearing officer specifically included a second vehicle driven at sustained high speeds to reach the 150,000 mile service life; the $14,000 cost along with the additional $3500 in maintenance and repair of that second vehicle makes up most of the $21,000 of damages to the plaintiff used in the hearing officer's calculations. See footnote 4 of this opinion.

The plaintiff also argues that most customers who were assessed the speeding fee operated the vehicles at speeds greater than eighty miles per hour and for sustained periods in excess of two minutes. Although some customers did operate the rental vehicles at speeds greater than eighty miles per hour and for sustained periods in excess of two minutes, the plaintiff charged the speeding fee if a customer operated the vehicle at eighty miles per hour for two minutes. Furthermore, using the hearing officer's calculation, a customer would have to travel more than 1070 miles at high speeds, without decelerating below eighty miles per hour, to cause $150 of excess wear on the vehicle. Presumably, the customer would have to stop to refuel several times, especially if driving at high speeds, to travel that distance. Each time the customer decelerated below eighty miles per hour, as would be required to refuel, the subsequent acceleration above seventy-nine miles per hour would trigger another "occurrence" and another speeding fee. Thus, the rental vehicle could never suffer enough additional wear due solely to high speed driving to qualify the plaintiff's speeding fee as a liquidated damages charge.

Regardless of the hearing officer's reasoning or the actual use of the vehicle, the plaintiff argues that the estimates used by the hearing officer were too speculative to provide an accurate estimate of the increased cost. The hearing officer used the estimates provided by the experts. Most of those experts testified for the plaintiff. Furthermore, the hearing officer used those estimates most favorable to upholding the reasonableness of the plaintiff's speeding fee. To the extent that the hearing officer's estimates are inaccurate, they are more likely to overstate the plaintiff's damages on the basis of the information available. At oral argument before the defendant, the plaintiff had another opportunity to provide information concerning potential damage to the vehicle. If the plaintiff had more accurate estimates of the damage to the vehicle, it had ample opportunity to present them for the defendant's consideration. We do not consider it an abuse of the defendant's discretion to use the only facts available to him to reach a conclusion concerning the reasonableness of the speeding fee.

In effect, the plaintiff relies entirely on the first of the three conditions delineated in *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.*, 153 Conn. 681, 686, 220 A.2d 263 (1966),[10] that must be satisfied to uphold a contractual provision for liquidated damages, namely, that the expected damages resulting from breach are uncertain in amount or difficult to prove. The plaintiff chooses to ignore the other two conditions: (1) that the parties intended to liquidate damages in advance; and (2) that the parties stipulated a *reasonable* amount that was *not greatly disproportionate* to the damage the parties might presume to be sustained by the contractee

---

[10] The plaintiff cites to *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.*, supra, 153 Conn. 686, for the three conditions that will justify an agreement for liquidated damages. *Norwalk Door Closer Co.* quoted those three conditions from *Berger* v. *Shanahan*, supra, 142 Conn. 732.

in the event of a contract breach. Id. Rather than offering any quantifiable justification for the reasonableness of the speeding fee, the plaintiff instead suggests that this court's decision in *Vines* v. *Orchard Hills, Inc.*, 181 Conn. 501, 512, 435 A.2d 1022 (1980), allows the parties to set any sum agreeable to both parties as the measure of damages so long as the damages are uncertain and difficult to prove.

In *Vines*, which involved the retention of earnest money in a contract for the sale of real property; id., 502–503; we concluded that "[i]t is not unreasonable in these circumstances to presume that a liquidated damages clause that is *appropriately limited in amount* bears a reasonable relationship to the damages that the seller has actually suffered." (Emphasis added.) Id, 512. Although the speeding fee in the present case was entitled to the presumption of validity, that presumption was rebuttable; id., 513; and the defendant had substantial evidence to conclude that the speeding fee did not satisfy the third condition found in *Norwalk Door Closer Co.*

Under the plaintiff's theory, it would be entitled to any amount in liquidated damages agreed to by the parties in the contract so long as the defendant could not prove with reasonable certainty that a breach of the contract could not cause that amount of damage. Theoretically, the potential liquidated damage amount would only be limited by the full value of the rental vehicle. Such a result does not logically follow from this court's reasoning in *Norwalk Door Closer Co.* and *Vines*. The plaintiff attempts to use the difficulty of determining the damage to the rental vehicle caused by a single incidence of exceeding seventy-nine miles per hour continuously for two minutes or more to justify the speeding fee. The difficulty of determining the damage, however, is caused by the minimal excess wear associated with any single incident, not because some

incidents result in extensive damage to the vehicle while others result in little or no damage. The mere fact that expected damages resulting from breach are uncertain in amount or difficult to prove does not justify enforcement of whatever amount the contract includes as damages for breach, especially where the record reveals no quantifiable justification for the speeding fee set by the plaintiff.

Finally, the plaintiff argues that the trial court improperly placed the burden upon the plaintiff to establish that the fee was a liquidated damages charge, rather than upon the defendant to establish that the fee was a penalty. A breaching party seeking to nullify a contract clause that fixes an amount as damages for the breach bears the burden of proving that the agreed upon amount so far exceeds any actual damages as to be in the nature of a penalty. See id., 513–14. Thus, the plaintiff correctly asserts that the defendant, as the proxy for the plaintiff's customers, bears the burden of establishing that the speeding fee was a penalty. Our review of the record indicates that the hearing officer properly placed the burden on the defendant to prove that the speeding fee was a penalty. In his memorandum of proposed final decision, which was adopted by the defendant in its entirety, the hearing officer specifically stated that "[t]he [department of consumer protection had] met its burden of proof regarding its allegations that [the plaintiff] violated CUTPA because the amount of the speeding [fee] constituted an illegal penalty or fine, rather than liquidated damages." Although the trial court referred to the plaintiff's failure to provide any definitive proof to justify the amount of the speeding fee, that reference was in the context of concluding that substantial evidence existed in the record to support the defendant's decision. The trial court did not place the burden on the plaintiff to prove that the speeding fee was a liquidated damages charge. It properly placed

the burden on the plaintiff to prove that the defendant's decision was contrary to law and in abuse of its discretion. See *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 343–44. The plaintiff failed to meet that burden.

The judgment is affirmed.

In this opinion the other justices concurred.