******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FEDERAL NATIONAL MORTGAGE ASSOCIATION *v.*
BRIDGEPORT PORTFOLIO, LLC, ET AL.
(AC 35466)

Gruendel, Alvord and Norcott, Js.

*Argued March 17—officially released June 3, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hartmere, J. [motion for summary judgment];
Tyma, J. [strict foreclosure judgment].)

*Richard P. Weinstein*, for the appellants (named
defendant et al.).

*Peter A. Ventre*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendants, Bridgeport Portfolio, LLC, and Wilfredo Santos, appeal from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Federal National Mortgage Association.[1] On appeal, the defendants claim that the trial court erred by including both default interest and a prepayment premium in its calculation of the mortgage debt. We disagree and affirm the judgment of the trial court.

The court's memorandum of decision and the record reveal the following facts and procedural history. On May 27, 2009, Bridgeport Portfolio, LLC, executed a multifamily, open-end mortgage in favor of Arbor Commercial Funding, LLC, on four commercial properties in Bridgeport to secure the payment of a promissory note in the amount of $7,780,000. Santos allegedly executed a guaranty as further security for this commercial transaction.[2] Arbor Commercial Funding, LLC, assigned the subject note, mortgage and related loan documents to the plaintiff by assignment dated May 27, 2009. The plaintiff commenced the present foreclosure action when payments due on May 1, 2010, and thereafter were not made as required by the terms of the loan documents.

The plaintiff's revised amended two count complaint was filed on January 6, 2011. Count one of the complaint sought a judgment of foreclosure; count two of the complaint sought a money judgment against both defendants for the amounts due under the promissory note and the guaranty of the promissory note On March 2, 2011, the defendants filed an answer with one special defense that alleged: "Any claim of prepayment premium is precluded or void as against public policy; as a forfeiture and/or penalty which is repugnant to the law; and is not a voluntary payment being made by the defendant herein, and is otherwise unenforceable in that it is not readily computed under the document."

On August 18, 2011, the plaintiff filed a motion for summary judgment as to liability with respect to both counts of the complaint. In the memorandum of law in support of its motion, the plaintiff argued that the defendants' special defense was insufficient to defeat the motion because the special defense did not address the issue of liability. As stated by the plaintiff: "The defendants' sole special defense challenges the imposition of a prepayment premium—provided for by the loan documents—as well as the manner in which the prepayment premium is calculated. Thus, it goes exclusively to the issue of the plaintiff's damages. By contrast, the instant motion seeks summary judgment as to liability only. Accordingly, any dispute over the amount of the debt is beyond the scope of the judgment sought, and it does not raise a genuine issue of material fact

sufficient to defeat summary judgment as to liability."

In the defendants' response to the plaintiff's motion for summary judgment, they argued that the plaintiff was not entitled to summary judgment with respect to the second count of the complaint. With respect to the first count, however, the defendants represented that they did not contest the granting of the plaintiff's motion. The defendants agreed that their special defense went to the determination of the amount of the debt only, and not to the issue of their liability under the loan documents. The defendants qualified their statement by noting that they meant to "defer and reserve the opportunity to challenge any claim for pre-payment premium, default interest, or other charges that the plaintiff may ultimately seek until such time as the plaintiff asks the court to determine an amount to be included in any judgment of foreclosure or judgment of liability."

On March 8, 2012, the court, *Hartmere, J.*, issued its order, which granted by agreement the plaintiff's motion for summary judgment as to liability only with respect to count one. The court denied the plaintiff's motion with respect to count two, concluding that the papers submitted demonstrated the existence of genuine issues of material fact. By motion dated May 24, 2012, the plaintiff requested that the court bifurcate count one and count two of the complaint so that each count could be separately resolved. Although the defendants objected to bifurcation, Judge Hartmere granted the plaintiff's motion on June 20, 2012. The plaintiff then filed a motion for a judgment of strict foreclosure on September 7, 2012.

On November 15, 2012, the plaintiff filed an affidavit of debt, which added, inter alia, default interest and a prepayment premium to the outstanding principal balance. The defendants filed an objection to the affidavit of debt on November 29, 2012, claiming that the inclusion of a prepayment premium and default interest in the judgment would "penalize the defendant borrower for the same contractual breach, in violation of public policy." The defendants argued that the plaintiff was "attempting to collect two amounts as liquidated damages for the same purported injury to the plaintiff" and that it was "seeking an amount that is disproportionate to any anticipated loss." The court scheduled a hearing to provide the defendants with an opportunity to contest the calculation of damages and to offer contrary evidence.

On December 19, 2012, a hearing was held on the motion for strict foreclosure and the objection to the affidavit of debt. At that time, Paul Taylor, a senior risk manager employed by Arbor Commercial Funding, LLC, testified that his employer originated multifamily mortgages, closed the loans and then sold them to the plaintiff. Arbor Commercial Funding, LLC, retained the

servicing rights for the term of the loan. Taylor testified that the subject loan was in default and that the acceleration date was July 29, 2010. Taylor, in explaining the amounts set forth in the affidavit of debt, testified that the default interest rate, found at paragraph 8 of the note, compensated the plaintiff for the additional cost incurred in servicing a loan that has defaulted and for the higher degree of risk of collection.[3] He then explained how the default interest was calculated for the subject loan.

Taylor also testified that the prepayment premium, referenced in paragraph 10 of the note, applied to both voluntary and involuntary prepayment.[4] He testified that the purpose of such a premium was to ensure that the lender was made whole in the event a borrower prepaid the note, so that the lender would get the same return as it would have had if the note had been paid as contractually agreed. Taylor stated: "[T]he prepayment premium represents loss of future earnings and the default rate compensates the lender for the loss of current earnings." He then explained how the prepayment premium for this loan was calculated. Taylor was the only witness to testify at the December 19, 2012 hearing. After Taylor's testimony, counsel for the parties stated that they would rely on the arguments contained in their briefs, which already had been filed with the court.

On February 20, 2013, the court issued its memorandum of decision. The court quoted provisions in the promissory note that provided for the collection of default interest and a prepayment premium upon the acceleration of a loan in default. The court determined that the defendants had agreed to these provisions and that there were no legal or equitable reasons for precluding the inclusion of such amounts in the calculation of the debt. The court found: "This was a sophisticated commercial transaction between two limited liability companies. It appears from the documents that the parties were represented by counsel, as one would expect in a complex transaction involving a multi-million dollar commercial loan." The court determined that "the default rate and prepayment premium provisions of the note are valid and enforceable against the defendants." The court concluded by finding that the plaintiff had proved the debt as set forth in the affidavit of debt and rendered a judgment of strict foreclosure. This appeal followed.

The first issue that we must address is the plaintiff's claim that Santos' appeal should be dismissed because he is not aggrieved by the judgment of strict foreclosure. The plaintiff argues: "Santos is not a proper party to the appeal as judgment directly against him as a guarantor has not been entered, specifically as to the bifurcated second count. . . . [T]here is no basis for an appeal by . . . Santos, and no judgment has entered against him individually on count two; hence, he is

not aggrieved.”

“[A] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.” (Internal quotation marks omitted.) *Emerick* v. *Glastonbury*, 145 Conn. App. 122, 127, 74 A.3d 512 (2013), cert. denied, 311 Conn. 901, 83 A.3d 348 (2014).

The deficiency judgment procedure, set forth in General Statutes § 49-14, presumes the amount of the debt as established by the foreclosure judgment. See *First Bank* v. *Simpson*, 199 Conn. 368, 373, 507 A.2d 997 (1986). The plaintiff's position throughout these proceedings is that Santos, as guarantor, will be conclusively bound by the trial court's determination of the mortgage debt. Clearly Santos has a “real interest” in the judgment of strict foreclosure because the court determined that both default interest and the prepayment premium were to be included as part of the outstanding debt. Santos claims that those amounts are penalties and that it is against public policy to award them for breach of contract damages. If Santos is found liable as a guarantor under the terms of the loan documents, the deficiency assessed against him will include those disputed amounts.

Moreover, the court's memorandum of decision expressly stated that the challenged provisions in the note were “valid and enforceable against the *defendants*.” Significantly, the plaintiff, in its memorandum of law in support of its motion to bifurcate counts one and two of the complaint for separate proceedings, represented: “Bridgeport Portfolio, LLC, and Wilfredo Santos are the defendants in both counts of the complaint. . . . The defendants have conceded that they are in default, and that they are liable on count one. Fairness dictates that [the plaintiff] is allowed to prove its damages and move expeditiously to full judgment on that count.” Accordingly, we find the argument that Santos has no “real interest” in the judgment of strict foreclosure to be without merit.

We now address the defendants' claim on appeal that the court improperly included both default interest and a prepayment premium in its calculation of the mortgage debt.[5] They argue that “the combined assessment of such levies . . . is invalid as contrary to well-established Connecticut public policy governing the assessment of damages for breach of contract.” Although they concede that a provision in a mortgage loan contract for default interest “is proper under appropriate circumstances”[6] and that a provision for a prepayment premium in such a contract “is proper under appropriate

circumstances,"[7] they claim that the "combination of these two levies" is "objectionable" because it "impose[s] a penalty upon the defendants and grant[s] a concomitant windfall to the plaintiff."[8]

The defendants cite no relevant case law that supports this argument. As found by the trial court, the defendants, as sophisticated parties, agreed to the terms in the promissory note and related loan documents. "A promissory note is a written contract for the payment of money, and, as such, contract law applies." *Antonino* v. *Johnson*, 113 Conn. App. 72, 75, 966 A.2d 261 (2009). "The standard of review for the issue of contract interpretation is well established. When, as here, there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary. . . . The reviewing court must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273–74, 982 A.2d 1125 (2009).

In the present case, the defendants do not claim that the default interest and prepayment premium provisions are unclear or that the calculation of the amounts made pursuant to those provisions was erroneous. Instead, the defendants claim that the court should not have enforced both provisions because the combination resulted in a penalty rather than reasonable liquidated damages. "We long have held that contracting parties may decide on a specified monetary remedy for the failure to perform a contractual obligation." *Bellemare* v. *Wachovia Mortgage Corp.*, 284 Conn. 193, 203, 931 A.2d 916 (2007). A provision in a contract calling for the imposition of a penalty for the breach of the contract is contrary to public policy and invalid, but a liquidated damages provision that fixes the amount of damages to be paid in the event of a breach is enforceable if it satisfies certain conditions. Id.

"A contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach. . . . A provision for liquidated damages, on the other hand, is one the real purpose of which is to fix fair compensation to the injured party for a breach of the contract. In determining whether any particular provision is for liquidated damages or for a penalty, the courts are not controlled by the fact that the phrase liquidated damages or the word penalty is used. Rather, that which is determinative of the question is the intention of the parties to the contract. Accordingly, such a provision is ordinarily to be construed as one for liquidated damages if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was

uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 306–307, 869 A.2d 1198 (2005).

The defendants have not claimed that the damage to be expected as a result of a default could easily be determined, or that the parties had not intended to liquidate damages in advance. Instead, they claim that the court awarded "inconsistent and . . . excessive damages." They also claim that the award violates "[t]he prohibition against double recovery."

"A breaching party seeking to nullify a contract clause that fixes an amount as damages for the breach bears the burden of proving that the agreed upon amount so far exceeds any actual damages as to be in the nature of a penalty." *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 273 Conn. 314. Under the circumstances of this case, the liquidated damages provisions were entitled to the presumption of validity as bargained for terms in the contract. That presumption was rebuttable. The defendants, however, failed in their attempt to challenge those provisions because they failed to present *any* evidence that the default interest and prepayment premium damages were greatly disproportionate to the actual losses sustained by the plaintiff as the result of the defendants' default. See id., 313–14.

Contrary to the defendants' assertions, there was no evidence presented that the award of default interest and a prepayment premium resulted in a double recovery or a windfall to the plaintiff. As the provisions in the note expressly provided, and the testimony of Taylor at the hearing confirmed, the damages contemplated by each provision reflected different economic realities and were not duplicative. Further, the provisions were but one part of a complex commercial transaction between financially experienced and sophisticated parties. Moreover, the defendants did not claim fraud, duress, or other unconscionable acts by the plaintiff, nor did they claim that they misunderstood the liquidated damages provisions. Finally, there was no claim or evidence that the provisions were at odds with common practice in the commercial lending industry or that the default rate was outside of commercially acceptable rates.

We see no reason to relieve the defendants from compliance with the terms of a contract that was entered into freely, particularly when the terms were

clear and unambiguous.[9] The prepayment premium provision expressly provided that the other terms of the loan were more favorable to the defendants because they had agreed to the inclusion of the prepayment premium provision. The certainty of the remedies provided by the default interest provision and the prepayment premium provision affected the pricing of the loan. If we deem those provisions unenforceable, we would be providing the defendants with a better contract than they were able to negotiate for themselves. We decline to remake the contract between the parties.

For the foregoing reasons, we conclude that the trial court did not improperly include both default interest and a prepayment premium in its calculation of the mortgage debt. We do not find that it is against the public policy of the state to enforce both provisions of the promissory note when the sophisticated parties, represented by counsel, entered into this loan contract with knowledge of its terms.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] A subsequent encumbrancer, Mac-Gray Services, Inc., also was named as a defendant in this action, but it is not a party to this appeal. We therefore refer in this opinion to Bridgeport Portfolio, LLC, and Wilfredo Santos as the defendants.

The appeal in this case was originally filed with the caption *Fannie Mae* v. *Bridgeport Portfolio, LLC*. The caption has been changed to reflect that Federal National Mortgage Association is the proper name of the plaintiff. We note that the microfiche version of the Appellate Court Record and Briefs in this case will be found under the original caption.

[2] The claim against Santos as guarantor is set forth in count two of the plaintiff's operative complaint and has not yet been adjudicated.

[3] Paragraph 8 of the promissory note provides in relevant part: "So long as any monthly installment or any other payment due under this Note remains past due for 30 days or more, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or other payment due, as applicable, at the Default Rate. . . . Borrower also acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, that, during the time that any monthly installment or payment under this Note is delinquent for more than 30 days, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities, and that it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment or other payment due under this Note is delinquent for more than 30 days, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan."

The term "Default Rate" is defined in paragraph 1 of the note to mean: "A rate equal to the lesser of 4 percentage points above the Interest Rate or the maximum interest rate which may be collected from Borrower under applicable law."

[4] Paragraph 10 of the promissory note is titled: "Voluntary and Involuntary Prepayments." Paragraph 10 (e) provides: "Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustra-

tion or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth on Schedule A represents a reasonable estimate of the damages Lender will incur because of a prepayment."

Paragraph 10 (f) provides: "Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the loan evidenced by this Note, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions."

[5] The plaintiff claims that the defendants waived their right to raise this issue because it was determined at the time the court ruled on the motion for summary judgment as to liability only, and the defendants did not appeal from that ruling. Because damages were not determined until the rendering of the judgment of strict foreclosure, the defendants could not have appealed from the ruling on a motion for summary judgment as to liability only. See *Essex Savings Bank* v. *Frimberger*, 26 Conn. App. 80, 80–81, 597 A.2d 1289 (1991). Furthermore, given the plaintiff's representations to the court in its memorandum of law in support of that motion, as quoted earlier in this opinion, the plaintiff's argument as to waiver warrants no further discussion.

[6] "[W]e [have] recognized the lawfulness of a default interest rate as a way to compensate lenders for a borrower's delinquency." *Cadle Co.* v. *D'Addario*, 131 Conn. App. 223, 249, 26 A.3d 682 (2011).

[7] There is no appellate case law that directly addresses the issue of the validity of a prepayment premium. We, however, find persuasive the reasoning of the court, *Hon. Robert Satter*, judge trial referee, in the Superior Court decision of *Eastern Savings Bank*, *FSB* v. *Munson*, 50 Conn. Supp. 374, 382, 932 A.2d 1079 (2007). Judge Satter, after reviewing relevant case law in several other jurisdictions, concluded that a prepayment premium provision is enforceable in a foreclosure proceeding.

[8] Paragraph 6 of the promissory note provides for the collection of both amounts if the borrower is in default and the lender exercises its option to accelerate the loan indebtedness: "If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Paragraph 10, if any, and all other amounts payable under this Note and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower. Lender may exercise this option to accelerate regardless of any prior forbearance."

[9] "We decline to abandon the basic principle of contract law that we construe contract language by reference to the words chosen by the parties. Especially in the context of commercial contracts, we assume that definite contract language is the best indication of the result anticipated by the parties in their contractual arrangements." *Tallmadge Bros.*, *Inc.* v. *Iroquois Gas Transmission System*, *L.P.*, 252 Conn. 479, 500, 746 A.2d 1277 (2000).

[10] "The principle that agreements contrary to public policy are void should be applied with caution and only in cases plainly within the reasons on which that doctrine rests; and it is the general rule . . . that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. . . . The impropriety injurious to the interests of society which will relieve a party from the obligation he has assumed must be clear and certain before the contract will be found void and unenforceable." (Citations omitted; internal quotation marks omitted.) *Collins* v. *Sears*, *Roebuck & Co.*, 164 Conn. 369, 376–77, 321 A.2d 444 (1973).